Case No. 24-5163, et al. Campaign for Accountability v. United States Department of Justice, Appellants. Mr. Tenney for the Appellants. Mr. Abdo for the Appellate. Good morning, Counsel. Mr. Tenney, please proceed when you're ready. May it please the Court. Plaintiff has not identified any category of OLC opinions that would cause a need to deviate from this Court's analysis in Electronic Frontier Foundation. Regardless of the precise context in which the need for an OLC opinion arises, OLC is still at bottom providing legal advice to agencies who then in turn make policy decisions or other agency actions that may or may not be subject themselves to the reading provisions of the FOIA. The particular category that the District Court identified was resolving disputes between agencies, but there's nothing fundamentally different about those opinions than any others. In fact, the very opinion in Electronic Frontier Foundation itself reflected a disagreement between the Office of Inspector General and the FBI about a legal question. And although that case arose because it was the FBI that went to OLC for an opinion rather than a joint request from the FBI and OIG, there's no basis for concluding that this Court would have come to the opposite conclusion if formally both of them had gone to OLC and said, we don't agree about this, as opposed to the FBI going itself. And in fact, as the record reflects, there's not really a difference, and OLC doesn't track, you know, which of its opinions arise from interagency disputes and which don't. In each case, OLC is just making a determination based on its discussions with one or more agencies and rendering legal advice. And that legal advice is subject to the deliberative process privilege and doesn't constitute a final opinion or a statement of policy or interpretation adopted by an agency and therefore is not subject to the reading provisions. Mr. Tenney, can I ask you a threshold question about CFA's standing? What do you think they need to show to establish standing under TransUnion and this Court's precedents, such as in prosology? Because the reading room provision is unlike the individual FOIA provision where we have said that a person who seeks information and is denied it has informational standing. The reading room provision is a general obligation on the government. So what do they need to show to establish standing after TransUnion? I mean, they did ask for information, and this Court and others have recognized that you still need to exhaust your claims. And as the district court recognized in this case, the only relief they can get is not relief that would require the government to comply with the reading room provision and put the materials on a website, but rather just provide it to them. So I'm not sure they're differently situated in the sense that they have asked OLC for the information, they've received responses. So even though they didn't make a request under A3, which is typical, we haven't taken issue with the idea that they're still a requester of information. So are you suggesting that they have standing because their request is sort of functionally like an A3 request? I mean, to be clear, we haven't contested standing, we haven't taken a position on it. We have to independently. Right. No, I understand that. And, you know, that, I mean, I guess we haven't identified a distinction between asking for information that you think the agency was compelled to make public under A2 and asking the agency to provide that information to you, which you think is required under this Court's case law, and filing a request under A3 for the same or similar information. I mean, that's not an issue that we've briefed or argued, but we haven't made an argument along those lines. And we have this decision prosology where this similar issue came up, and one of the points that the Court made in the course of that opinion was that the information in other cases involving A3 was sought and then it was denied. I'm sorry, A2, the reading room provision. And here I take it that it seems like it functionally that's what happened, that the requesters asked for the information and then, under the reading room provision, and then were rebuffed. Yeah, that's correct. Both initially and then, you know, they filed an amended complaint, and then there was, in the record, a response from OLC. I mean, it was to the complaint in court, but it was still, you know, OLC providing an answer about what, you know, that it was not planning to provide this information. And as I pointed out, the District Court recognized that the relief that they are asking for and the only relief that they could get is producing the documents to them. Is it fair to say, then, from the government's perspective, as Judge Rao says, we have to consider standing no matter what. But is it fair to say that the government's position is that you don't see that there's a standing problem here? We have to make that assessment in the first instance, whether we agree with that. I mean, we certainly haven't identified one or argued that there's no standing. And so, you know, we're not asking the court to rule on that ground. And I think if the court were to conclude that they have made a request in this case and concluded that that was sufficient to satisfy this court's precedence, that would be a reasonable resolution of the standing issue here. Can I ask a question about the merits? So there's kind of mirror image ways of looking at this. One is the way the government presents the cases should look to see whether these opinions fall within the deliberative process privilege. And if they do, the case is over. And the way that the District Court looked at it and the way that the requesters look at it is kind of the opposite. Look, these fit within the reading room provision, and therefore they have to be disclosed. And is there an order of operations that you think has to govern? Or do you think it's up to the court just to choose which way to proceed? Fundamentally, the question under both approaches is the same, which is whether this is final or whether it's pre-decisional. And I mean, I guess a few points. One is, it's definitely correct that if the deliberative process privilege applies, then there's no obligation to disclose, regardless of what the reading room provision says. The District Court recognized that. And, you know, the 552B is an exemption from the entire act. So in that sense, you know, you could certainly resolve the case on that ground. But I think the reason we focus so much on the deliberative process privilege is as much that that is the issue that this court has already resolved. And because everyone understands, and the Supreme Court has said, that if something is deliberative, then it's necessarily pre-decisional. And then it can't be a final decision or an adopted statement of policy. That the logic of electronic frontier foundation means that the government wins whichever way you look at it, whether you look at it under B-5 or whether you look at it as a question of whether the reading room provision applies. So I guess one scenario that could play out, and just correct me if I'm wrong and not understanding how FOIA processing works. But one scenario that at least conceptually occurs to me is that if we focus on the reading room provisions, and we say that the reading room provision doesn't, that these documents don't fit within the reading room provision, then there's not an affirmative obligation on the part of the government to post them. But then that wouldn't be to the exclusion of seek filing an individual request under A-3. Is that right? That is true. And then would that then just tee up whether in response to that request, whatever set of opinions is sought is protected by the deliberative process privilege? Right. If the court were to hold that the reading room provisions don't apply to these categories, and it would have to hold in order for plaintiff to prevail, it would have to hold that it applies to all the opinions in some category, which seems plainly not true. Then obviously the logic of the court's opinion in that regard might control or at least highly influence a subsequent analysis of whether the deliberative process privilege applies if these opinions were requested through A-3 on an individual or categorical basis. But there can be a circumstance, and this court has explained it, I think in AFCHAR, where materials are not subject to the reading room provisions but nonetheless must be provided upon request. And so the court could leave that possibility open. Since all of the issues are briefed here, and since, as I said, in this particular context, the analysis that would lead the court to conclude that the reading room provisions don't apply would also lead the court to conclude that the deliberative process privilege does apply. It might be helpful for the parties if the court were to say all of that in resolving this case, but I don't disagree that if the court simply wanted to say the reading room provisions don't apply and therefore this complaint should have been dismissed in its entirety or summary judgment granted for the government on the one count that wasn't dismissed, then that would properly dispose of the case. But then would that not at least leave open conceptually the possibility? I mean, obviously, how it's written wouldn't affect things, but if that scenario played out, would it conceptually leave open the possibility that then an A-3 request could be made and then the deliberative process privilege would be asserted and then the courts would be faced with squarely confronting that question? That's right. If the mere fact that the court had held that the reading room provisions didn't apply would not preclude a subsequent request along those lines, the logic of the court's opinion might well preclude it. So could there be a request for all OLC opinions resolving interagency disputes that were adopted by the agencies? I mean, I think in that circumstance, you would have to determine whether that request reasonably described, particularly the documents, because there could be some legal disputes about what was and wasn't adopted. I'm interested in that just because from the perspective of a requester, they don't know what interagency disputes have been presented to OLC, but there might be some subset of them that would qualify under the reading room, even if most OLC opinions are pre-decisional advisory type things. Once they're adopted, I think it's clear that they would be subject to the reading room exception and also not subject to the deliberative process privilege. So how does a requester get at the things that they might be entitled to get? I guess a couple of responses. In terms of the reading room provision, the agency that would be subject to a requirement under the reading room provision would be the one that adopted the opinion because that would be the agency that had made it. The FOIA request could be made to OLC because the documents are also in your possession. Right, right. And I guess I was getting the point. The point I'm trying to make is that the OLC might not have an obligation under the reading room provision to provide the document. If OLC were aware that a particular document had been adopted by another agency, which would constitute a waiver of the privilege, then if a request was made to OLC for that opinion and it had not already been made public, then OLC would not claim the privilege over that opinion and would provide that opinion to the requester under A3. And OLC, in this case, has already expressed that it would intend to do that. So a requester could simply file an A3 request to OLC. And the other thing that OLC did in this case is make discretionary releases of some of the opinions that fall in the categories that plaintiffs have asked for. So a requester doesn't have to say only the ones that are adopted or only the ones that aren't. I mean, if there's a particular category of OLC opinions that a requester wants, it can ask for them. And then OLC will make a determination about whether they're, A, whether they're privileged, which some of them may not be if they've already been adopted, and B, even if they're privileged, whether the government wants to waive the privilege and make a discretionary release of the opinions. And it regularly does so. So are you saying that if a requester asks for all OLC opinions resolving interagency disputes, OLC, on its own initiative, looks at all of those and decides which ones have been adopted or which ones otherwise are not privileged and releases those? With a caveat that, as explained in the record, OLC doesn't actually track which of its opinions formally arose from interagency disputes because those aren't a particularly distinct category of decisions. But as a general matter, if someone makes a request for some defined – and so OLC would have to figure out whether that was a category that it could ascertain. But as a general matter, if someone makes a request to OLC for some category of – a proper FOIA request, stipulating that it's a proper FOIA request for some category of OLC opinions, then OLC does a search, concludes whether there are opinions in the category requested, determines whether it wants to release them regardless of any privilege or if any privilege has been waived. And, in fact, some of the opinions that would have fallen within this case have been discretionarily released. So if they make a request for all OLC opinions, OLC looks through all of its opinions and decides which ones are not subject to that? I mean, there are separate questions about the breadth of a request and, you know, what the agency needs to do in responding to a request of that scope. But if you sort of – I don't understand that to be the thrust of your question. I'm just interested in, like, how does a requester who actually might be entitled to get some of this information make a request that reveals that information? I mean, I can certainly tell you that people make requests for OLC opinions on particular topics, OLC opinions in particular timeframes, OLC opinions with particular characteristics, and OLC processes those. And sometimes the opinions have already been discretionarily released. Sometimes OLC concludes that it's prepared to release those as a discretionary matter. And sometimes as an electronic frontier foundation, OLC claims that they're privileged or subject to some other FOIA exception under – and, therefore, withholds them. And that's no different from any other agency. And, you know, there's nothing to stop anybody from doing that. Brad, is there an upshot of your position that unless OLC discretionarily releases an opinion, which obviously can always happen, that every OLC opinion is protected by the deliberative process privilege? So, OLC never as a matter of FOIA has to disclose an opinion. It may be that another agency might adopt an OLC opinion, and then that other agency might be required to disclose it as a matter of FOIA. But OLC is never required to release an opinion, even if it's ultimately adopted by another agency. OLC itself is never required to release an opinion in response to a FOIA request. Is that the upshot of the government's view? Not quite. There's one caveat. If that – if you substituted in response to a request with – under the reading room provisions, then that would be correct. If there is a request for an opinion that a different agency has adopted, then OLC would no longer treat that as privileged and, therefore, subject to other exemptions, would have an obligation to release it pursuant to a request. Correct. But it's not that they would discretionarily not treat it as privileged. It's just that the privilege wouldn't work anyway because it will have been waived. That's correct. But so in direct response to your question, there could be a circumstance in which OLC, in response to a request, as is distinguished from under the reading room provisions, would have an obligation. One other question on this. So the way that this case has come up and then the way EFF, Electronic Frontier Foundation, was litigated, it's OLC – the relevant agency is the agency that requests the opinion from OLC. And then the question is, for reading room provision purposes, whether there's finality and it's congealed into an opinion and those kinds of things with respect to this other agency. And the logic is that what OLC does, even if it's practically treated as binding vis-a-vis the other executive branch agency, it doesn't dictate something that the other agency has to do. What about a request that is predicated on the logic that the agency is OLC or DOJ itself? And it's final as to OLC, DOJ, itself, regardless of what may ultimately ensue with respect to another agency. That is an argument, or at least a version of argument, that has been advanced in Electronic Frontier Foundation and in CRU and in this case. And I mean, you can always say that when there's an executive branch decision being made, if some component of the executive branch has provided advice. For example, if the Department of Defense were making a determination about whether to engage in some course of conduct and then asked EPA for advice about the environmental consequences, then EPA would provide its advice. And that might be final as to what EPA is saying, but nobody would think that that's a final decision because the final decision is the one that's being made by the Department of Defense. And all of the rationales for the deliberative process privilege would apply in that circumstance because you wouldn't want people to know that the Department of Defense had asked EPA what advice EPA had given. EPA would want to be able to give advice candidly and freely without revealing it to the public. And so the mere fact that the consulting agency or the consulting components don't all fall within the same executive branch agency doesn't mean that the advice rendered by one component of the executive branch is final in the relevant sense for purposes of the deliberative process privilege. I mean, this court decades ago has recognized that principle in the context of agencies making budget requests. And if they make a budget request to OMB, even if the agency is done, nobody thinks that the budget request is other than deliberative because OMB or the president is the one that's ultimately going to decide. So reframing the relevant agency from the government's perspective wouldn't change anything in reality, and therefore it doesn't change the way you've put the case stop operation of the deliberative process privilege as a bar against disclosure. Right. The point is that the question is the way this fits into the determination of what policy to adopt. And if there is some step of that process that is merely a step and not the finality of that process, then that is pre-decisional and deliberative. And who is doing it is not what matters. Can I just ask you a factual question? When OLC gives one of these opinions to another agency, and if the agency adopts the OLC opinion normally as part of its decision making process, does the agency usually in that situation check with OLC before making a disclosure of an OLC opinion? It's a hard question to answer because it's actually quite uncommon that agencies do adopt OLC opinions. I mean, they're legal advice in the same way that if the general counsel of a company or of an agency provided advice, it would be unusual. But it's not never. I mean, sometimes agencies want to say that what they're doing has been supported by an opinion from OLC. So I'm just wondering in those situations if that agency is then free to just release the OLC opinion. Just to be clear, if an agency says that what it's doing is supported by OLC, that is different from saying the reasons that we're taking this action are all of the reasons that were set out in the OLC opinion. So that might not constitute adoption. If they fully adopt the OLC opinion. I don't know that that comes up enough that I can tell you that there's a general rule. It would surprise me if an agency did that without talking to OLC about it. But I can't stand here and tell you from practical experience that I know the answer of how that would play out. Thank you. All right. Thank you. We have a little time for rebuttal. Mr. Abdo. Good morning. It may please the court. Congress enacted FOIA's reading room provision to prevent the accumulation of secret law. And yet the OLC argues that may continue to suppress the three categories of opinions at issue here, even though these opinions directly establish the law and policy of the agencies that solicit them. The government's entire argument rests on this court's decision in EFF, but its interpretation of that case is wrong for two fundamental reasons. First, EFF did not involve a claim under 552A2A. The core reasoning of the case focused on whether the OLC opinion at issue determined agency policy or had been adopted. Those considerations are relevant under A2B, which requires the disclosure of opinions of statements of policy which have been adopted, but they're not relevant to 552A2A. And so EFF is no barrier to our claims with respect to two of the three categories at issue. And that's the reasoning that then Judge Jackson and Judge Cobb both relied on in ruling that the category of opinions resolving interagency disputes must be disclosed under the reading room provision. Second, even under 552A2B, EFF just isn't categorical. It made clear that OLC opinions qualify as working law when they speak with authority on agency law or policy. The opinion in EFF didn't speak with authority because it wasn't sought to establish the law of the agency and because, as the court said, it merely examined policy options. But the three categories of opinions at issue here do speak with authority. The explanation why is unique to each category, but generally for each, they are sought to establish agency law or policy, and there is no distance between the OLC's legal conclusions and agency law or policy. Can I ask you about the first? You said you had two distinctions on the first one. But EFF was about the deliberative process privilege at the end of the day, right? That's right. So if EFF governs with respect to the deliberative process privilege and put aside your second ground for distinction, then how could it matter that then the deliberative process privilege is just a bar? I don't think that's right. If, as a textual matter, these opinions fall within A2A, if their final opinion is made in adjudication of cases, and the Supreme Court said very clearly in Sears, A2A opinions may never be withheld under Exemption 5. That means they are, as a category, simply not deliberative. I thought in Sears there's also a footnote. There is a footnote that says hypothetically. If an opinion could be both deliberative and a final opinion, then maybe the court would have to resolve this question. But it made clear— No, I thought what that footnote said is then it would be within the deliberative process privilege and therefore didn't need to be deliberative. You're correct. But the court made clear that those opinions, by virtue of falling within A2A, were not deliberative. And the same is true here with respect to these three categories. But I guess I don't understand the logic of that because I think what that footnote indicates is what the text of the statute seems to indicate, which is that if something falls within the deliberative process privilege, then the rest of the act doesn't apply, including the reading room privilege. And so I think there's a lot to what you're saying, which is that what the presupposition of Sears is that this practically may never come up because for the same reason something falls within or without the reading room provisions, it may fall within or without the deliberative process privilege, and so the Venn diagrams don't ever overlap, and so you're never going to be faced with this. But it did seem like what that footnote said and what's echoed by this statutory structure is that if you engage the possibility that the Venn diagrams overlap to some extent, then the deliberative process privilege governs. And if something falls within the deliberative process privilege, then it doesn't. It can't fall. It can't be required to be disclosed under the reading room. I think that's right, but the considerations that this court addressed in EFF are not general deliberative process privilege questions. The questions that the court addressed were, did the OLC speak with authority, and even if not, was the opinion adopted? Those are two ways by which an opinion might fall within A to B and therefore not be deliberative in the working law framework, but it doesn't engage the question of whether if something is otherwise a final opinion made in the adjudication of a case, it is somehow deliberative. And I think just as a practical matter, it isn't. Let me give you an example from our second category. The second category involves situations where an agency is actually adjudicating a claim of private right. The adjudication turns on some question of law, and they go to the OLC for an authoritative statement of the law that applies to that adjudication. They being an agency. They being the agency goes to the OLC. And in that circumstance, the opinions at the OLC issues are then sought specifically to establish the law of the case, the law of the underlying adjudication. And those opinions are materially indistinguishable from this court's past opinions. Coastal States, Tax Analyst 1 and 2, and Schleffer. There's simply no material distinction. An agency adjudicator goes to an agency lawyer to get the law that applies to the adjudication, and this court held correctly in those four cases and others that those resulting opinions are not deliberate. They are instead the law of the agency because in the circumstances, they are sought specifically to establish the law. So I mean, you're right to rely on prior cases, and because we've had a lot of cases that say a lot of things. And I guess it looked like what EFF did was it took into account those same cases, including the tax analyst cases. And it drew a distinction based on the fact that in those cases, there was a top-down dynamic at work. And within the agency, what was going on is the legal opinion that was at issue was a directive, and it was binding on people who are lower in the organization. And that just doesn't – what EFF seemed to say is that's not what's the dynamic when another agency requests an EFF – I'm sorry, an OLC opinion. And that's not the same dynamic because the requesting agency, yes, as a practical matter, their OLC opinions are controlling, but EFF specifically wrestled with whether they're binding in the sense that they are final and operative for reading room provision purposes, and EFF seemed to indicate that they wouldn't. I think EFF applied that to a – that logic to a single – not that logic. It just found that the single opinion at issue was flowing upward in the context of a decision-making process. It did not purport to establish a categorical bar to the application of FOIA to the OLC, and it couldn't have. The OLC's opinions in the context of the categories that we're talking about do in fact flow downward from the agency that is given the authoritative power to interpret the statutes and laws at issue to an agency that is tasked simply with implementing them. When, for example, in the attorneys' fees opinion that we point to, there was a $150,000 award of attorneys' fees. It was unclear which agency defendant was obligated to pay it. A federal statute said the agency over which the party prevailed has to pay, and the agencies went to the OLC, tell us which agency, and the OLC said HUD, the Department of Housing and Urban Development is that agency. There was no decision to be made at that point. HUD bore the legal responsibility to pay those fees, and it flowed downward. There was no ongoing deliberation, and the same is true in our first category. There is no deliberation when two agencies bring established policies to the OLC. For example, in the reservist leave opinion that we point to, there are two agencies that have different policies on reservist leave. The VA, the Department of Veteran Affairs, said military reservists can choose which form of statutory leave to use first. That was their policy, and that's what their reservists were operating under. The Office of Personnel Management had the opposite policy. It said they couldn't choose. They had to use Category 1 before going on to Category 2. Two established policies, no deliberation, and the OLC said the VA's policy was correct. There was no further decision to be made at that point with respect to those policies. So it seems to me that it's problematic for you that you are trying to get a ruling that applies to a whole category of cases, and you're pointing to these specific examples that seem to support your position, but there could be situations where OLC issues an opinion, and then nobody does anything with it. They haven't adopted it. They just haven't used it, and also I think it's also problematic if you want to rely on subsection A. You're trying to say that a final opinion of OLC is made in the adjudication of cases by the agency, because the adjudication is by the agencies, but the final opinion is by OLC. So I see those as two potential weaknesses. Respectfully, I don't think either is a problem. In this Court's past cases, it adopted this precise categorical approach. For example, in Tax Analyst 2, technical assistance memoranda of the chief counsel of the IRS were at issue, and the Court took a category-by-category approach and said some- I don't have any problem with taking a category-by-category approach generally. I'm just saying under the circumstances that you're presenting, you're saying in every case, OLC issues an opinion, and it is- Well, we're not saying in every case. We're saying with respect to only these three narrow categories, and these are narrow categories with respect to the OLC. But isn't there a possibility that the OLC could issue an opinion in an interagency dispute, and then nobody does anything with it? I don't think-  Our understanding, the record reflects that the examples that we put into the record are emblematic of the category as a whole, and the government has never disputed that. It has released 1,400 opinions. We've studied every single one, and we're not aware of examples in the categories that we have pointed to that are of the nature that you're describing. But if there were the rare-off chance that one happened to fall otherwise within the category as this court described it in a ruling, and the OLC maintained that for whatever reason there was some feature of this opinion that was salient in the analysis that wasn't in the category generally, the OLC would always at that point be able to withhold it, and we could have litigation over that. But they haven't disputed, I don't think, that the categories we've identified, the examples we put in the record, are emblematic of the categories. And that mode of analysis, by the way, was how the court engaged the question in Tax Analyst 2. There were technical assistance memoranda that fit within three or four different categories. The court said one of them was working law. The rest weren't, and even within the category of working law, some were unique, and the court allowed their withholding. That's all we're asking for here. I forget the second- If you want to rely on subsection A, it says final opinions made in the adjudication of cases. But it seems to me that your analysis is the final opinion is by OLC, but the adjudication of cases is by the agency. That's right, but I don't think that matters. When the OLC issues the opinion at that moment, it is the final opinion made in the adjudication of a case, and it is- And how is it a case? It depends on the two different categories are slightly different. So the second category is there is obviously an adjudication going on below. For example, in the Social Security Administration case, the DOMA case that we point to, the Social Security Administration was adjudicating a claim for insurance benefits on behalf of a specific individual, Elijah, who is the son of women in a same-sex marriage, a same-sex civil union, excuse me, in Vermont, and the question arose whether the Defense of Marriage Act foreclosed Elijah's entitlement to benefits. How is an interagency dispute a case that's adjudicated? For the reasons that Judge Jackson explained, the OLC has a process that is both statutorily provided for and provided for by executive order to adjudicate disputes between settled policies of agencies. But those sources don't say that what advice OLC gives is binding. Well, the government concedes that OLC opinions are binding, and they are, in fact, binding. For 200 years- But those sources don't say it's binding, just for purposes of saying adjudicating a case. Well, I'm not sure that's right. I think 28 U.S.C. 512 makes very clear that the opinions of the attorney general are the opinions of the executive branch. And the government has never disputed in this case. It used to 10 years ago. It used to dispute that OLC opinions were binding. But all over its brief in this case, it has made clear that its opinions are binding. It says so in the best practices memo. And for 200 years, not a single OLC opinion has been contravened by an underlying agency. There's just no question. I mean, even in this court's past cases- That's when they publish an opinion. I mean, agencies, as a practical matter, sometimes disregard OLC's advice. I don't think that's accurate, Judge Rao. And it's not just when the OLC publishes an opinion. The scholarship suggests that for 200 years, every OLC opinion that has been issued has been treated as binding by the agencies that receive them. And the government has not identified a single instance of the contrary in any case, let alone this one. But even if there was some question as to whether the opinions are binding, in Coastal States and Tax Analysts 1 and 2 and Schleffer, this court made clear that they didn't need to be binding as a formal matter for them to constitute working law. They needed to be held in high regard and generally followed. And that was sufficient in those cases. They didn't insist on binding. The only thing- Judge Rao, if I can ask you about standing, I'd like to give you an opportunity to address that. Because our case in prosology recognizes that there is a meaningful difference between a reading room provision, a FOIA, and the provision for individual requests of information with respect to standing. And that was even before TransUnion. And then TransUnion says for informational injuries, you need a downstream arm. And so here, your organization is trying to enforce the reading room provision. What is the particularized harm to your organization? How do you satisfy the concerns that were reflected both in prosology and in TransUnion? I think this question is effectively resolved by CRU 1, this court's decision in CRU 1, and also the Supreme Court's decision in Sears. Our client, the Campaign for Accountability, filed a request with the agency asking for the OLC's opinions retrospectively and prospectively. The OLC denied it, and we sued. That's the fact pattern under CRU 1 that this court said would allow a court to- But CRU 1 was before both prosology and TransUnion, wasn't it? I think so. I don't know. I think TransUnion was two years ago. Was that right? I don't remember the year of TransUnion. That may be right, but I think the standing analysis is still the same. We requested the records. FOIA has a judicial review provision that this court in CRU 1 said could be enforced. And the fact pattern of Sears, by the way- You requested the records under both A2 and A3, or just under the reading room provision? I don't think- The reading room provision is meaningfully different. I don't think the opinion identified A3 as the basis, but I'm not sure that matters. We requested the opinions. We are denying them. That's an informational harm that is- That's an informational harm under A3. Why is it an informational harm under A2, which is the provision that you're trying to- Campaign for Accountability is trying to get OLC to publish these things on their own, which is a general obligation that the agency has under FOIA. So to sue for that, there has to be some particularized harm. It's a harm because we want them in the future, and the agency has made clear in the future it will continue to treat the question of whether to publish them as entirely within its own discretion. That, by the way, was the fact pattern of Sears. A request was filed, and the court issued a ruling not under A3 but under A2A. I don't think there's any material distinction between the decision Sears and the way that we're proceeding here. But if you're troubled by that, you could treat it as a decision under- You could treat our request as a request under A2 and then limit the relief if you want. I'm not sure as a practical matter that will have any significant result, but- I don't think it would be open to us to treat it as a request under A3. Excuse me, A3. I meant to say A3. That wasn't the request that was made. The request was just made for opinions. I think that counts as a request under A3. We didn't identify A3 as a request, but there's no obligation to use magic words when filing FOIA requests with agencies. And the remedy you requested, was it just that it be released to you or that the agencies publish it as a reading? We asked that they be released to us and that they also release indices to us, and that's the form of relief that this court in Crew 1 said was available. So you just asked for it to be released to you. So it seems that the injury is identical to if you had made an A3 request. You're just asking that the information be released to you. That's right. And when this- I forget the year that Crew 1 was decided, but it's not available to us to ask for release to the public under this court's decision in Crew 1. Isn't the relief that you're asking for broader than- I mean, you're saying you want forward-looking relief for OLC to make these categories of opinions available under the reading room provision. Yes, that's right. Which is different than an A3 request. That would be just to CFA. That's right. It's different than an A3 request. If you don't think we have standing to seek the prospective relief, then you could limit our relief to retrospective. That would still have a significant effect. But I don't think there's any meaningful distinction between how we're proceeding and the path that the court laid out in Crew 1, and I don't think TransUnion calls standing in that context into question because we filed the request. There's no question that the OLC in the future is going to treat its opinions in the same way that it's treating them now, and so we will continue to suffer the harm that we're suffering now, which is not getting records that we think we're statutorily entitled to. I may not have persuaded you. No, I'm just saying that's an A3 harm, though. That's not an A2 harm. The A2 requires agencies to just make these things available, so it's reading room provision. I understand. If the court wants to treat the request as one under A3 and limit the relief that we get to A3 relief for that reason, it would still be possible for the court to reach the legal questions that are up on appeal. Thank you. Can I ask, on the EFF applicability, there's this dynamic that you've outlined about a situation in which two agencies come in and want an opinion, and then the way you see it, there's nothing yet left to be done because the OLC issues an opinion, it's the referee, it decides the dispute, and then that opinion becomes operative by the way this plays out. Then one of the government's responses is, well, you can manufacture the same situation in EFF itself and have another agency come in and express that it has a contrary view and you just want that to be resolved, and would EFF have turned out differently if it had arisen in that context? I don't think the OLC would have issued an opinion in that context. The best practices memo makes very clear at page 300 of the joint appendix that the OLC doesn't issue opinions in abstract legal disputes. It wants essentially a case or controversy, and if you look at that description of when it issues opinions, it's effectively a case or controversy requirement for the OLC. But it is true that depending on context, an opinion in one may or may not be working law or may or may not be a final opinion made in the adjudication of cases, but that is the lesson of this court's past cases, that context matters. In Tax Analyst 2, the court made very clear that an identical memorandum that travels upward versus horizontally might in the former case be a deliberative advice and might in the latter case be the working law of the agency that receives it. I don't think that's a problem. If the government were actually pointing to examples in the record or had even tried to submit some under seal where there are interagency dispute resolutions or opinions in Categories 2 or 3 that bore the characteristics that we described but that were nonetheless deliberative, then I think they'd have an argument, but they haven't done that. Their only argument is that the OLC's conclusive resolution of a policy dispute or its establishment of a law that an agency will apply in an adjudication or its determination of what a non-discretion or illegal obligation means, its only argument is that those are all deliberative because the OLC at the end of the day is a legal entity. But this court has already rejected that logic, and I don't think EFF could have undone the decades of this court's past precedent recognizing that legal opinions can sometimes be the working law of the agencies that request them based on the circumstances of their solicitation and their issuance. And that fundamentally is the rule that we're asking this court to apply, to recognize that context matters and to recognize that these three categories of opinions, when they're issued, there's no distance between the legal determinations made and the underlying law and policy of the agencies that solicit them. And it sounds to me that from your explanation just now, that you don't see a difference at the end of the day based on whether we view it as the applicability of the deliberative process privilege on one end or the applicability of the reading room provisions on the other end because they ultimately turn on the same considerations anyway. I think that's right. I think the easiest way to resolve the first two categories is to apply the text of A2A instead of relying on amorphous considerations of deliberation. I think A2A is very clear as a textual matter. The Supreme Court interpreted it in Sears, and this court can just apply the text of A2A in resolving categories one and two, and then rely on the court's observation in Sears that final opinions are effectively never going to be deliberative because those two categories just don't overlap. I think for the third category, you could approach it in either way. The third category is the only one where you have to address the considerations from EFF because the argument we're making there is that the opinions issued in that category reflect a statement of policy.  The third category, the opinions interpreting non-discretionary legal obligations. And our argument with respect to that category, again, is that when the OLC issues those decisions, it is deciding the underlying agency's policy because the legal obligation is non-discretionary. There's no further work to be done before coming up with a policy. For that category, I think you do have to address EFF, but I think the category satisfies the requirements of EFF, again, because there's no distance between law and policy in that context. Thank you. Lieutenant, we'll give you two minutes for rebuttal. Just three quick points, one general and two about specific categories. The general point is that ultimately what this court deemed conclusive in EFF is true of all opinions, which is where they flow. They flow from OLC to some agency that ultimately has policymaking authority. And that's true whether it's resolving a case. That's true regardless of the degree to which it constrains the agency's policy—the legal framework constrains the agency's policymaking discretion. That's just true across the board, and there's really no escaping that. The two specific points, you know, counsel asserted that we hadn't identified any opinions that resolve interagency disputes but still leave policymaking discretion. We did on page 20 of our response reply brief where OLC advised that EPA had authority to assess civil penalties against federal agencies. EPA then could make a decision about whether it wanted to do that or not. So that wasn't a final decision. EPA still got to decide what it wanted to do. So that's just illustrative of the general problem here, which is that these opinions go to agencies. They may leave the agency with more or less discretion at the end of the day, but ultimately the agency has to do something and decide what to do, and that's the final decision that's not deliberative. And then finally, on the category of, you know, what happens if as a practical matter the legal decision leaves little or no room for the agency to, you know, make policy adjustments? I mean, that's Murphy. In Murphy, the general counsel of the Army was deciding whether there was a binding contract or not and whether the agency should keep working on it. And this court said it doesn't matter whether the general counsel as a practical matter was telling them something that they had to abide by because the ultimate policy decision was made by the policymaking official and not by the general counsel. So ultimately all of the categories boil down to this is legal advice. Somebody makes a policy decision. That policy decision is the final decision and the legal advice is deliberative. I can ask you, that isn't true in tax analysts, that same interplay that the legal opinion that was sought is legal advice, and then somebody makes a decision based on that legal advice. Well, so in tax analysts, and, you know, obviously this court reviewed that in Electronic Frontier Foundation, but in tax analysts the setup was, I mean, there were some different categories, but, you know, if I'm remembering correctly, you know, the counsel's office, you know, someone would say, I'm trying to decide this case and what legal rules should I apply in that case and was asking within the legal office of its own agency. And that legal office had authority to tell people here are the legal rules to apply in your case. And so that was a directive within the agency of, you know, here's what you're supposed to do. If there is a directive within an agency about what you're supposed to do, that is the rules that govern the conduct of employees in that agency, that directive will be rendered by officials in that agency who may have consulted OLC and may do something that's consistent with what OLC said, but the directive they're giving will be given by people within the agency and, you know, down to subordinates or horizontally within the agency. But, you know, the point that this court made in Electronic Frontier Foundation is that that's not how OLC works. And you can't say that's not how OLC works when it's doing one thing, but when it's, I mean, none of the categories that the plaintiffs have identified here that make any difference in that respect. So they're really just trying to relitigate Electronic Frontier Foundation. It just, it just seems to me then what's doing the work is not that it's legal advice. It's whether it's operating horizontally or vertically. I guess it's not whether it's certainly not whether it's legal, it's whether it's advice, it's whether it's a directive to do something or whether it's advice. And if it's advice, even if it's advice that you're, you know, that you will follow, it's still advice. I mean, in other words, it can only be a directive if it's vertical. Right. It can only be advice if it's horizontal. I mean, I think that that's the way the court looked at it in Electronic Frontier Foundation. I mean, I don't think this is a controversial point though. Like if, if you have an agency general counsel's office and, you know, there's some policymaker who's trying to decide whether to engage in a particular policy. And they say to the general counsel, is this lawful or not? And the general counsel says, no, not lawful. Then the policymaker probably won't do it. It would be astonishing to say that's no longer attorney client privilege. That's no longer deliberative. That's a final decision. That's just classic legal advice. Whereas if someone goes to the council's office and says, we're,  you know, how do you want me to decide this question? And then the council's office says, here's how you decide the question. Then that's directive. And, and, and, you know, all I'll see is similarly situated. Okay. Thank you. Thank you, Mr. Tenney. It occurs to me that there's a cross appeal. So I think in fairness,  strata, you should get two minutes for a. Sir rebuttal, if you'd like. Thank you. Just very briefly, your honor, it can't be the rule that because of downstream decision could be made that a, that a policy decision.  uh, that perceives a downstream decision is all of a sudden deliberative. That would allow the deliberative process privilege to swallow all of FOIA. And this court addressed that question, uh, in each of the past cases, coastal states, section was one,  and Schleffer and said, uh, if the opinion is at the moment of issuance, the working law of the agency. Uh, that's adequate future deliberations over future decisions. So, for example, in the opinion, uh, that Mr. Tenney referred to,  the EPA, you know, the dispute in that case was whether the EPA's policy that it had legal authority to issue fines was correct, or instead the DOD's policy that the EPA did not have that authority was correct. And the old, he said the EPA was correct. And so that then became the operative policy of both agencies. Of course, there are downstream decisions to be made following that policy. And those decisions might very well be deliberative, but the legal decision, the legal position of the agency was set. At the moment that the OLC issued that opinion. And that's why that opinion and the others in the categories that we're seeking, um, are either working law or final opinions upon their issuance. Thank you. Thank you. Counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Rao; Pan